THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ALICIA MAY DILLON                                                      PLAINTIFF

v.                          Case No. 4:19-cv-00219-KGB

KYLE TOLER, *et al.*                                                DEFENDANTS

<u>**OPINION AND ORDER**</u>

Plaintiff Alicia May Dillon brings this case pursuant to 42 U.S.C. § 1983 alleging violations of her First, Fourth, Fifth, and Fourteenth Amendment rights and violations of Arkansas state law (Dkt. No. 2). Before the Court is defendant Officer Kyle Toler's motion for summary judgment (Dkt. No. 57). Ms. Dillon has not responded to Officer Toler's motion. For the following reasons, the Court grants Officer Toler's motion (Dkt. No. 47).

I.      **Statement Of Facts**

The Court's recitation of facts is drawn from Officer Toler's statement of undisputed facts (Dkt. No. 59). Ms. Dillon has not responded to Officer Toler's statement of undisputed facts nor filed her own statement. Therefore, Officer Toler's statement of undisputed facts is deemed admitted, pursuant to Local Rule 56.1(c) of the *Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas*.

On October 3, 2018, a notice of eviction was served on Ms. Dillon (Dkt. No. 59, ¶ 1). On October 16, 2018, Lilly Mae Fair, LLC, filed a cause of action against Ms. Dillon based on unlawful detainer (*Id.*, ¶ 2). On October 16, 2018, the summons and complaint of unlawful detainer was served on Ms. Dillon (*Id.*, ¶ 3). On October 23, 2018, the Circuit Court of White County issued a writ of possession to the Sheriff of White County, Arkansas (*Id.*, ¶ 4). On October

24, 2018, at 1:30 p.m., the writ of possession was served on Ms. Dillon (*Id.*, ¶ 5).  On October 25, 2018, at 2:25, Ms. Dillon was removed from the property and arrested (*Id.*, ¶ 6).

To date, the writ of possession has not been invalidated (*Id.*, ¶ 7).  On October 25, 2018, Ms. Dillon was charged with obstructing governmental operations (*Id.*, ¶ 8).  On December 17, 2018, Ms. Dillon entered a not guilty plea, and a trial was set (*Id.*, ¶ 9).  On May 31, 2019, a trial was held, and Ms. Dillon failed to appear (*Id.*, ¶ 10).  On November 12, 2019, Ms. Dillon pled guilty to obstructing governmental operations (*Id.*, ¶ 11).  To date, Ms. Dillon's conviction for obstructing governmental operations has not been overturned (*Id.*, ¶ 14).  *See* Arkansas Judiciary Website, Docket Search, http://caseinfo.arcourts.gov; *State v. Alicia May Dillon*, SES-18-3311.[1]

It is the policy of the White County Sheriff's Department that "[l]aws of arrest, search, and seizure are defined by the United State Constitution, Arkansas Statutes, and judicial interpretation to protect individual rights of all persons.  It is the policy of this agency to always use legal justification and means for any arrest, search, or seizure." (*Id.*, ¶ 15).  The White County Sheriff's Department Arrest Procedures policy states, "[y]ou may arrest when you have an arrest warrant, reasonable belief there is an outstanding arrest warrant, or probable cause to believe a crime has been committed." (*Id.*, ¶ 16).  It is the policy of the White County Sheriff's Department that officers making an arrest shall "as promptly as is reasonable under the circumstances, inform the arrested person of the cause of the arrest."  (*Id.*, ¶ 17).  It is the policy of the White County Sheriff's Department "to (1) provide techniques to accomplish a thorough and legal search; (2) observe the constitutional rights of the person(s) the warrant is being served upon; (3) minimize the level of

---

[1]  The Court can take judicial notice of the proceedings in Ms. Dillon's state case because the proceedings are directly related to her federal claims.  *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996).

intrusion experienced by those who are having their premises searched; (4) provide for the highest degree of safety for all persons concerned; and (5) establish a record of the entire execution process." (*Id.*, ¶ 18).

## II.    Legal Standard

Pursuant to the Federal Rules of Civil Procedure, the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if a reasonable jury could render its verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  Mere denials or allegations are insufficient to defeat an otherwise properly supported motion for summary judgment.  *See Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271-72 (8th Cir. 1992); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

First, the burden is on the party seeking summary judgment to demonstrate an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019).  If the moving party satisfies its burden, the burden then shifts to the non-moving party to establish the presence of a genuine issue that must be determined at trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).  The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at

586, 587).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

### III.     Motion for Summary Judgment

Officer Toler brings his motion for summary judgment arguing that he did not violate Ms. Dillon's constitutional rights, that Ms. Dillon's claim of illegal search is invalid under the *Rooker-Feldman* doctrine, that Ms. Dillon's claim of unlawful arrest is barred by *Heck v. Humphrey*, that he is entitled to qualified immunity, and that there is no basis for official liability (Dkt. No. 57, at 2).

#### A.      Analysis Of Individual Capacity Claims Against Officer Toler

##### 1.      Illegal Search Claims

Ms. Dillon alleges that officers, including Officer Toler, "bust my apartment door in using force and without a warrant" and "police illegally searching my apartment."  [sic] (*Id.*).  Officer Toler asserts that no search warrant was implicated, as Officer Toler was not performing a search of Ms. Dillon's apartment.  Rather, he was tasked with removing Ms. Dillon from her apartment pursuant to a writ of possession (Dkt. No.58, at 3-4).  Officer Toler argues that he attempted to remove Ms. Dillon from her apartment pursuant to the writ, but Ms. Dillon refused to vacate and exit the apartment (*Id.*).  Therefore, officers entered her apartment to facilitate her removal (*Id.*, at 4).  *See* Dkt. No. 59, Ex. A.

Officer Toler argues that, in accordance with *Rooker-Feldman*, a federal court other than the United States Supreme Court does not have jurisdiction to hear challenges to state court judgments (*Id.*).  "The basic theory of the *Rooker–Feldman* doctrine is that only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court

judgment." *Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 754 (8th Cir. 2010) (quotations omitted); *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923). Officer Toler argues that Ms. Dillon is "essentially asking this federal district court to decide that the state court's writ of possession was invalid." (Dkt. No. 58, at 4).

The Court agrees with Officer Toler. By alleging that Officer Toler's entry into the apartment was unlawful, Ms. Dillon is asking this Court to declare the properly served state-issued writ of possession invalid. This Court may not make such a finding pursuant to the *Rooker-Feldman* doctrine.

Even if the Court were to consider Ms. Dillon's claims under the Fourth Amendment, the Eighth Circuit caselaw, as well as caselaw from other jurisdictions, generally indicates that an individual loses his or her reasonable expectation of privacy when he or she has been justifiably ejected from the property. *See United States v. Molsbarger*, 551 F.3d 809, 811 (8th Cir. 2009) ("[W]hatever expectation of privacy Molsbarger may have had, it ceased when he was justifiably evicted from the hotel."); *Young v. Harrison*, 284 F.3d 863, 869 (8th Cir. 2002) ("When Young was justifiably evicted from the hotel because his friends created a disturbance, the control over the hotel room reverted to the management and Young cannot assert an expectation of being free from police intrusion upon his solitude and privacy in a place from which he has been justifiably expelled." (internal quotations omitted)); *United States v. Rambo*, 789 F.2d 1289, 1295 (8th Cir. 1986) (finding defendant "was justifiably ejected from the hotel under Minnesota law" and he could not "assert an expectation of being free from police intrusion upon his solitude and privacy in a place from which he has been justifiably expelled"); *see T.K. by Gagnon v. Cleveland*, No. 2:19-CV-04100-NKL, 2020 WL 3947276, at *14 (W.D. Mo. July 10, 2020) (collecting cases).

While Ms. Dillon was removed from her residence, not a hotel room as in *Molsbarger*, *Young*, and *Rambo*, she had been properly served with a notice of eviction on October 16, 2018, and properly served with the writ of possession on October 24, 2018.  *See* Dkt. No. 59-1, Ex. A. Ms. Dillon does not dispute service or the validity of the notice or writ, nor has she put forward any record evidence that calls either into question.  Therefore, it is likely that Ms. Dillon had lost any reasonable expectation of privacy when she was removed from the apartment.

In the alternative, Officer Toler argues that Ms. Dillon has "failed to prove a constitutional violation" and that he is therefore entitled to the protections of qualified immunity (Dkt. No. 58, at 9).  The Court finds that, on the record evidence presented, Officer Toler's "entry did not violate clearly established law," and he is therefore entitled to qualified immunity.  *Pearson v. Callahan*, 555 U.S. 223, 243 (2009).  The Court also grants summary judgment to Officer Toler on this alternative basis of qualified immunity.

Accordingly, based on the record evidence before the Court and drawing all justifiable inferences in Ms. Dillon's favor, Officer Toler's motion for summary judgment as to Ms. Dillon's Fourth Amendment illegal search claims is granted, and those claims against Officer Toler are dismissed.

### 2.      Unlawful Arrest Claim

Ms. Dillon alleges that Officer Toler "Unlawfully Arresting me for Obstruction of Government Operations." [sic] (Dkt. No. 2, ¶ 16).  Officer Toler argues that he is entitled to summary judgment pursuant to *Heck v. Humphry*, 512 U.S. 447 (1994), because Ms. Dillon pled guilty to the charge of obstructing governmental operations and that conviction has not been overturned.

In *Heck*, the Supreme Court held:

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87.

Here, Ms. Dillon pled guilty to the charge of obstructing governmental operations on November 12, 2019 (Dkt. No. 59-2, Ex. B).  To date, that conviction has not been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.  Therefore, "insofar as [her] claim alleging unlawful arrest is based on the lack of probable cause, it is barred by *Heck*."  *Gerling v. City of Hermann, Missouri*, 2 F.4th 737, 743 (8th Cir. 2021) (citing *Heck*, 512 U.S. 447).

In the alternative, Officer Toler argues that Ms. Dillon has "failed to prove a constitutional violation" and that he is therefore entitled to the protections of qualified immunity (Dkt. No. 58, at 9).  "The issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996); *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012).  Here, as an alternative basis on which to grant summary judgment, the Court determines at a minimum that Officer Toler had arguable probable cause and is entitled to qualified immunity.

Accordingly, based on the record evidence before the Court and drawing all justifiable inferences in Ms. Dillon's favor, Officer Toler's motion for summary judgment as to Ms. Dillon's unlawful arrest claims is granted, and those claims against Officer Toler are dismissed.

### 3.   First Amendment Claims

The Court also understands Ms. Dillon to allege that Officer Toler violated her First Amendment rights by "possesses my cellular device, and ends my Facebook live Broadcast of the Police." [sic] (Dkt. No. 2, ¶ 16).  In his motion, Officer Toler does not address Ms. Dillon's First Amendment claims but does argue that Ms. Dillon "has failed to prove a constitutional violation" by Officer Toler.  Therefore, the Court considers Ms. Dillon's alleged claim and Officer Toler's claim of qualified immunity.

The Eighth Circuit has recognized that "public officials have no general privilege to avoid publicity and embarrassment by preventing public scrutiny of their actions."  *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005).  Therefore, there exists a "clearly established right to watch police-citizen interactions at a distance and without interfering."  *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020) (including recording of police-citizen interactions in its analysis).  However, in the present case, Ms. Dillon had to be removed from the apartment by officers and was placed under arrest for and later pled guilty to obstructing governmental operations.  She was not an onlooker, nor was she at a distance.  She herself was being placed under arrest.  Therefore, the Court finds that Ms. Dillon has failed to establish a violation of her First Amendment rights on the record evidence before the Court, and Officer Toler is entitled to qualified immunity on Ms. Dillon's First Amendment claim.

Accordingly, based on the record evidence before the Court and drawing all justifiable inferences in Ms. Dillon's favor, Officer Toler's motion for summary judgment as to Ms. Dillon's First Amendment claims is granted, and those claims against Officer Toler are dismissed.

B.      **Official Capacity Claims**

The Court also understands that Ms. Dillon has sued Officer Toler in his official capacity, claiming that several policies or practices are the cause of the alleged deprivation of her rights.  A claim against an official in his official capacity is equivalent to a suit against the governmental entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)).  Therefore, suit against a sheriff or other county official or employee, in his or her official capacity, is the equivalent of a suit against the county itself.  *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  Accordingly, the Court treats Ms. Dillon's claims against Officer Toler in his official capacity as a suit against White County Sheriff's Office, a governmental entity.

A governmental entity is liable only when the entity's policy or custom caused the violation of federal law.  *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city, and it requires the same showing that a policy or custom caused the alleged violation.").  Pursuant to § 1983, the governmental entity is liable if the plaintiff establishes that the alleged constitutional violation resulted from a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by the governmental entity or through a custom, "even though such a custom has not received formal approval through the body's official decision making channels." *Marchant v. City of Little Rock, Ark.*, 741 F.2d 201, 204 (8th Cir. 1984) (quoting *Monell,* 436 U.S. at 690-91) (alterations adopted).   Therefore, a plaintiff must establish an official policy or custom to recover against defendants sued in their official capacities.  *See Marchant*, 741 F.2d at 204 (citing *Rollins v. Farmer*, 731 F.2d 533, 535 (8th Cir. 1984)).  Under certain circumstances, a governmental entity

may also be liable for the inadequate training of its employees. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Officer Toler has submitted the White County Sheriff Department's policies regarding arrest, search and seizure, and the observation of constitutional rights. All the aforementioned policies of the White County Sheriff's Department are constitutional on their face, and Ms. Dillon has not raised any insufficiencies with the stated policies. Further, Ms. Dillon has not identified in the record evidence before the Court any unwritten customs resulting in constitutional deprivations. This Court has concluded that Officer Toler is entitled to summary judgment in his favor on Ms. Dillon's underlying constitutional claims. Liability will not attach as to the governmental entity unless individual liability is found on an underlying substantive claim. *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). As a result, Officer Toler, in his official capacity, is entitled to summary judgment in his favor on Ms. Dillon's constitutional claims under § 1983.

### C. State Law Claims

In her complaint, Ms. Dillon references alleged violations of Arkansas state law (Dkt. No. 2, ¶ 1). The Court has granted summary judgment in favor of Officer Toler and dismissed all of Ms. Dillon's federal claims against Officer Toler. To the extent Ms. Dillon intended to raise state law claims against Officer Toler, the Court declines to exercise jurisdiction over Ms. Dillon's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

### IV. Conclusion

For the foregoing reasons, the Court grants Officer Toler's motion for summary judgment as to Ms. Dillon's federal constitutional claims asserted pursuant to § 1983 against Officer Toler in his individual and official capacity and dismisses the remaining state law claims, declining to

exercise jurisdiction over the remaining state law claims (Dkt. No. 57).  As to Officer Toler, Ms.

Dillon's request for relief is denied.

It is so ordered this 10th day of September, 2021.

_Kristine G. Baker_
_____
Kristine G. Baker
United States District Judge